# In the United States Court of Federal Claims

No. 21-1736
(Filed: April 15, 2022)
(Re-Filed: May 4, 2022)[1]

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * *<br>M6-VETS, LLC,<br>        *Plaintiff*,<br><br>v.<br>THE UNITED STATES,<br>        *Defendant*,<br><br>and<br>HALVIK CORP.,<br>        *Intervenor*,<br>and<br>STEAMPUNK, INC.,<br>        *Intervenor*,<br><br>and<br>RIVA SOLUTIONS, INC.,<br>        *Intervenor*,<br><br>and<br>BOOZ ALLEN HAMILTON INC.,<br>        *Intervenor*.<br>* * * * * * * * * * * * * * * * * * * * * * | Bid protest; post-award bid protest; best value determination; highest technically rated proposal with a fair and reasonable price; transitive property of inequality; unequal treatment; *Blue & Gold* |

    *Ryan C. Bradel*, Tysons, VA, for plaintiff, M6-VETS, LLC, with whom was *P. Tyson Marx*, of counsel.

    *John M. McAdams III* and *Elinor J. Kim*, Trial Attorneys, United

---

[1] This opinion was originally issued under seal in order to afford the parties an opportunity to propose redactions of the protected material. We have redacted information necessary to safeguard the competitive process. Redactions are indicated by brackets.

1

States Department of Justice, Civil Division, with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Lisa L. Donahue*, Assistant Director, for defendant. *Nicholas Oettinger* and *Andrew Squire*, United States Patent & Trademark Office, of counsel.

*Alexander J. Brittin*, Washington, DC, for intervenor, Halvik Corp., with whom were *Mary Pat Buckenmeyer* and *A. Jonathan Brittin, Jr.*, of counsel.

*David S. Black*, Tysons, VA, for intervenor, Steampunk, Inc., with whom were *Gregory R. Hallmark*, *Amy L. Fuentes*, *Kelsey M. Hayes*, and *Hillary J. Freund*, of counsel.

*Elizabeth N. Jochum*, Washington, DC, for intervenor, RIVA Solutions, Inc., with whom were *Tjasse L. Fritz*, *Samarth Barot*, and *Patrick Collins*, of counsel.

*Gary J. Campbell*, Washington, DC, for intervenor, Booz Allen Hamilton Inc., with whom was *Lidiya Kurin*, of counsel.

OPINION

This is a post-award bid protest of the United States Patent and Trademark Office's ("USPTO" or "agency") decision to award an indefinite-delivery, indefinite-quantity contract for IT services to five companies: one non-intervening company, Science Applications International Corporation ("SAIC"), and four intervening companies, Halvik Corp. ("Halvik"); Booz Allen Hamilton Inc. ("BAH"); RIVA Solutions, Inc. ("RIVA"); and Steampunk, Inc. ("Steampunk"). Plaintiff, M6-VETS, LLC ("M6" or "protestor"), complains that the agency unreasonably evaluated Halvik's past performance, irrationally and unequally evaluated M6's technical approach, arbitrarily excluded labor rates from its analysis on how an offeror motivates and retains personnel, improperly and unlawfully evaluated price, and unreasonably used the transitive property of inequality. After a remand, the matter is now fully briefed on cross-motions for judgment on the administrative record, and oral argument was held on March 14, 2022. Because the agency's actions were reasonable, we deny the protest. Due to the related protests also filed in this procurement, the court's opinion in *Stratera Fulcrum Technologies, LLC v. United States*, 21-1770C, addresses

2

many of the claims made here.  The parties may look to that opinion for our reasoning and applicable legal standards.  If the necessary facts differ or the protestor presented unique arguments, they are addressed below.

## BACKGROUND

The following ratings were assigned to the protestor and awardees:

| Vendor Name | Business Size | Factor 1 | Factor 2 | Factor 3 | Factor 4 | Factor 5 |
|---|---|---|---|---|---|---|
| Halvik Corporation | Small | N/A | Satisfactory | Superior | Superior | Fair and Reasonable |
| RIVA | Small | N/A | Superior | Superior | Satisfactory | Fair and Reasonable |
| Steampunk | Small | N/A | Satisfactory | Superior | Superior | Fair and Reasonable |
| Booz Allen Hamilton | Large | Satisfactory | Superior | Superior | Superior | Fair and Reasonable |
| SAIC | Large | Satisfactory | Satisfactory | Superior | Superior | Fair and Reasonable |
| M6-VETS | Small | N/A | Satisfactory | Superior | Satisfactory | Fair and Reasonable |

Pl.'s Mot. at 12.

## DISCUSSION

### I. The Agency Did Not Arbitrarily or Unequally Evaluate M6's Technical Approach

M6 argues that it should have received two additional strengths for its technical approach: one for its "[*****]" and one for its "[*****] code deployment and [*****] code testing," which M6 also argues was a strength given to other offerors.[2]  Pl.'s Mot. at 21 (citing AR 2019, 2022–23).  The

---

[2] M6 also argues in this section that it was improperly assigned a Satisfactory rating despite having zero weaknesses in its technical approach.  Such matters are well within the discretion of the agency, as M6 acknowledges.  *See* Pl.'s Mot. at 21.  It argues that it can attack the agency's assignment of adjectival ratings as the agency used the ratings to "***pre-select*** [*****] as the fourth-best offeror."  *Id.* (Emphasis in original).  First, there is no indication the agency pre-selected [*****] to be the fourth-best offeror.  It selected [*****] to be the control offeror.  Second, as explained in *Stratera*, using the adjectival ratings to select a control is reasonable, as conducting an in-depth comparison of proposals to select a control would be contrary to the very purpose of selecting a control offeror.  M6's ratings were based on an in-depth evaluation, and we will not disrupt the agency's decision.

Case 1:21-cv-01736-EGB   Document 79   Filed 05/04/22   Page 4 of 9

government contends that it appropriately evaluated proposals and awarded strengths. We find no basis to overturn the agency's decision in this respect.

First, M6 argues that its [*****] should have received an additional strength because its proposal was "tailored to the Agency's requirements" and was "tailored to integrate [*****] into the USPTO portfolio." *Id.* M6 then goes on to describe its Playbook and why it deserved a strength.

The government responds that it acted within its discretion to not award M6 a strength. It argues that the [*****] was M6's proposed technical approach and that it did receive strengths, but M6 appears to seek an "'overarching' strength because of the way it was supposedly tailored to meet the USPTO's needs." Def.'s Mot. at 15 (citing Pl.'s Mot. at 28). It contends that M6 tailoring its proposal to the agency's needs is expected of vendors. As such, the agency exercised its discretion to not award M6 a strength for it. We agree with the government.

Awarding strengths is up to the discretion of the agency. M6 has provided no reasoning that it deserved a strength for its [*****] beyond the fact that it tailored the approach to the agency.[3] Such an assertion is merely a disagreement with the agency's evaluation.

Second, M6 argues that other offerors received strengths for "[*****] code deployment and [*****] code testing," while it proposed the same feature.[4] Pl.'s Mot. at 22 (citing AR 2022–23). M6 argues that Steampunk received a strength for its "[*****]" that provided "[*****] for [*****] testing and

---

3 Although the heading of this section of M6's motion implies that other offerors received strengths for tailoring their proposals to the agency's needs, M6 has not identified a proposal that received such a strength, nor has it said that its proposal is substantively indistinguishable from any such proposal.

4 M6 also argues in this section that Halvik received a strength that M6 should have received as well, but it makes no mention of how this relates to [*****] code deployment and [*****] code testing. Instead, M6 argues that Halvik received a strength for a having a "holistic" approach, while M6 did not despite the "flexibility and variety of processes" M6 proposed. Pl.'s Mot. at 24–25. It then describes the processes M6 proposed, but it did not say how they were substantively indistinguishable from Halvik's proposal. The government responds with differences between the proposals. M6 has not met its burden to show the agency acted beyond its discretion.

4

deployment [*****]."[5]   Pl.'s Mot. at 22 (quoting AR 944, 22F2).   M6 contends that it offered the same service to the agency.

The government responds that it reasonably assigned a strength to Steampunk and not to M6.   It argues that Steampunk's [*****] was [*****], distinguishing it from M6's proposal for [*****].   We agree with the government.

M6's proposal is distinguishable from Steampunk's.   M6 makes no mention of the details that the government identified in Steampunk's proposal. *Compare* AR 1530 *with* AR 2037.   The agency acted well within its discretion.

## II. The Agency Did Not Unreasonably Evaluate Offerors' Program Management and Staffing Approach or Unequally Evaluate M6's Approach

M6 next argues that the agency erred when it evaluated the offerors' program management and staffing approach and that it unequally evaluated M6's proposal.   Specifically, it quibbles with the agency's decision to not consider labor rates when evaluating the offerors' abilities to retain and motivate personnel.   It argues that the agency's decision was "asinine," as pay and benefits affect motivating and retaining personnel.   Pl.'s Mot. at 26.   It further argues that there is a "tension" with not evaluating labor rates, as the agency considered offerors' benefits, compensation, and bonuses during its evaluations. Pl.'s Reply at 16.   To then not address labor rates is irrational, according to M6.

The government responds that there was no requirement RFP to evaluate labor rate's effect on retaining and motivating personnel nor was there any mention that labor rates would be evaluated under any factor but price.   Thus, the government argues that the argument is waived under the *Blue & Gold* standard.   Further, the government argues that the tension referred to by M6 is speculative and appears to simply be a method for M6 to argue that labor rates should have been considered.   We agree with the government.

---

[5] M6 also argues in parentheticals that other offerors received strengths for code deployment and [*****] testing.   While M6 does not explain how the proposals are substantively indistinguishable, the government responds with the differences between the proposals.   Based on the record, we see no basis to overturn the agency's decisions.

Evaluating labor rates when considering an offeror's ability to retain and motivate personnel was not required. The RFP made no mention of such a requirement, and M6 does not make the assertion that it does. To argue that the RFP does require such an analysis is waived, as it is clear from the RFP that the agency was not required to do so. Under the *Blue & Gold* standard, M6 should have raised the issue before proposals were due. To the extent that M6 does not argue that it should have been a standard and it was simply arbitrary for the agency to not consider labor rates while considering other kinds of compensation, the agency had discretion in what it considered when evaluating offerors' proposals. M6's argument that the agency should have considered labor rates is a mere disagreement with the agency's decision.

M6 also argues that its program management and staffing approach was evaluated unequally compared to another offeror. M6 contends that it received a significant weakness for its "lack of information on [*****]," while Halvik received only a weakness for a similar issue. Pl.'s Mot. at 27 (citing AR 946, 12F4).

The government responds that Halvik's proposal was distinguishable. It contends that M6's proposal lacked details on [*****]. Halvik's proposal, however, did provide details on its transition out plan, but they were largely inadequate, according to the government. The differences in the proposals resulted in the different degrees of weaknesses. We agree with the government.

The proposals are clearly distinguishable, resulting in the different evaluations. M6's lacks detail. *See* AR 2075. It speaks in generalities and essentially only states [*****]. Halvik's proposal, on the other hand, provided a timeline and more details to the agency. *See* AR 1259–60. Because the proposals are distinguishable, we cannot interfere with the agency's decision.

### III.   The Agency's Use of the Transitive Property of Inequality Was Not Irrational

M6 then contends with the agency's use of the transitive property of inequality. It argues that the agency pre-selected [*****] as the fourth-best

6

offeror,[6] "favored speed over accuracy," did not conduct a best value analysis,[7] and misevaluated proposals.   Pl.'s Mot. at 29.

As stated in *Stratera*, the agency's use and application of the transitive property was reasonable.   The transitive property is not barred by any statute or the FAR, and the agency performed its analysis reasonably when comparing [*****] to other offerors.   Through an in-depth comparison, the agency found M6's proposal to be worse than [*****].   It also found [*****] to be worse than Halvik's, RIVA's, and Steampunk's.   It is reasonable, therefore, to conclude that all three offerors then presented a better offer than M6.

### IV.     The Agency Reasonably Evaluated Price

M6 then turns to the agency's evaluation of price.   It argues that the agency committed two errors when evaluating price: (1) the agency unreasonably claimed all offerors' prices were fair and reasonable, despite the wide difference in prices; and (2) the agency did not consider price when conducting its best value comparisons.   The government responds that it reasonably evaluated the offerors' prices and that M6 waived the right to challenge how the agency would consider price.   We agree with the government.

M6 first argues that the agency unreasonably evaluated all offerors' prices as fair and reasonable.   It points to differing prices offered by the small business awardees and itself, saying that the differences between the prices should not have resulted in all prices being rated fair and reasonable.   Thus, the protestor argues, the agency did not actually consider price when evaluating offers.

The government responds that it evaluated the offerors' prices

---

[6] As stated in *Stratera*, the agency reasonably selected [*****] as the control offeror.   Further, as stated above, [*****] was selected as the control, and there is no indication it was pre-selected as the fourth-best offeror. *See supra* Section I, n.1.

[7] This argument appears to concern whether the agency was required to conduct a tradeoff, as it cites that the best value comparisons did not include price as a consideration.   This argument is addressed in Section IV discussing the evaluation of price.

reasonably and in line with the RFP. It argues that the agency had discretion in what it considered fair and reasonable, and that it properly exercised that discretion in evaluating prices. It contends that M6 offers no authority to support its position and instead "cherry-picks" figures to show that the agency acted unreasonably. Def.'s Mot. at 33 (citing Pl.'s Mot. at 37). We agree with the government.

The record clearly shows that the agency evaluated prices. *See* AR Tab 28. M6 points to no portion of the RFP or the FAR to argue that the agency did not evaluate prices correctly. It simply appears to disagree with the agency's findings that the prices are reasonable. What is a reasonable price, however, is up to the discretion of the agency, and we do not possess the expertise to say the agency acted unreasonably.

M6 then argues that the agency ignored price in its best value analysis by only determining whether a price is fair and reasonable. This is similar to arguments advanced in *Stratera*.[8] M6 waived the right to raise this issue during this protest, as it was clear how price would be considered in the solicitation.

### V.    M6 Was Not Prejudiced by the Agency's Evaluation of Halvik's Past Performance

M6's arguments concerning the evaluation of Halvik's past performance are largely similar to the arguments advanced in *Stratera*, and they are also irrelevant for the same reasons addressed in that opinion. M6 was not prejudiced by the agency's evaluation of Halvik, as [*****] was still ahead of M6 for award.

### CONCLUSION

Because the agency acted reasonably in its analysis, M6's MJAR is

---

8 M6 does advance a unique argument that by using HTRFRP, the agency was not actually conducting an analysis based on the best value continuum. Still, however, it is clear from the RFP that the agency said it would conduct the procurement based on the best value continuum and that the agency would award contracts to the proposals that were the highest technically rated that had a fair and reasonable price. AR 540. Thus, if these two concepts are diametrically opposed, M6 should have protested the issue before proposals were due. Because it did not, it has waived this argument.

denied and the government's and intervenors' cross-MJARs are granted.   The Clerk of the Court is directed to enter judgment for the defendant and dismiss the case.   No costs.

<u>s/Eric G. Bruggink</u>
Eric G. Bruggink
Senior Judge
